**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, and JAMES S. | ) | |
| JORGENSEN, Administrator of the Funds, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-2402 |
| | ) | |
| CONCRETE CUTTING TECHNOLOGY, | ) | Judge Coleman |
| and JORDAN'S BROKERY & | ) | |
| CONSULTANTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR PROVE UP OF DAMAGES**

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively the "Funds"), and James S. Jorgensen, pursuant to Rule 55 of the Federal Rules of Civil Procedure, by their attorneys, move for Judgment of Damages in Sum Certain against defendants Concrete Cutting Technology and Jordan's Brokery & Consultants, Inc. (hereinafter "the Company"). In support of this Motion, plaintiffs, by their attorneys state:

1.     On April 8, 2011, plaintiffs filed a complaint under Sections 502(e)(1) and (2) of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §1132(e)(1) and (2); Section 301(a) of the Labor Management Relations Act, as amended, 29 U.S.C. §185(a); and 28 U.S.C. §1331 alleging that at all material times the defendant has an obligation, arising from a collective bargaining agreement to make contributions to plaintiffs' Funds, to submit to an audit upon demand

and to obtain and maintain a surety bond. In this Complaint, plaintiffs specifically alleged that defendant failed to report and pay contributions from January 2011 to the present. Plaintiffs requested relief included producing books and records for an audit upon plaintiffs' request.

2.     The Company's Registered Agent was personally served with the summons and complaint on May 3 and July 29, 2011 respectively, and the Company failed to answer. Plaintiffs attached proof of service to the plaintiffs' Motion For Default And To Compel An Audit. (Dk. #13).

3.     On October 19, 2011, the Court granted plaintiffs' Motion for Default and to Compel an Audit, and ordered defendant to submit to an audit as required by the Collective Bargaining Agreement that Mr. Roger Dezort, the Company president, signed on September 1, 2010, and which was attached to the Complaint. (Dk. #1)

4.     On November 3, 2011, a copy of this Court's order was personally served upon Mrs. Lucretia Dezort, the wife of Company president, Mr. Roger Dezort, at their residence at 3911 W. Pittsburgh Ave., Chicago Illinois by special process server. Mr. Dezort failed to comply with the Court's order to submit to an audit and to contact plaintiffs' counsel, Sara S. Schumann. The proof of service was filed with plaintiff's Motion for a Rule to Show Cause. (Dk. #21)

5.     On January 11, 2012, the Court ordered Mr. Dezort to appear to show cause why he should not be held in contempt of court. The Court's order to appear was personally served on Mr. Dezort at his residence 3911 W. Pittsburgh Ave., Chicago Illinois by special process server on January 19, 2012. (Dk. #24)

6.     On January 26, 2012, Mr. Dezort appeared before the Court as ordered. He represented to the Court that he had no records such that he was unable to comply with the Court's prior order to submit to the Funds' audit. However, Mr. Dezort agreed to now supply plaintiffs with his bank

records to substantiate his fringe benefit report payments and union dues report payments to the Funds.

7.   As established by the Funds' Field Department Representative, Michael Christopher, the Funds reviewed the Company's bank records which reflected $5,117.56 in delinquent contributions and $986.57 in liquidated damages due to the Funds for the period from October 10, 2010 through February 30, 2011 for two unreported employees. (See, Christopher Affidavit, Exhibit A, ¶5; Laborers' Pension & Welfare Funds Contractor Penalty History, Exhibit B, p.2).

8.   Plaintiffs' counsel sent Mr. Dezort a demand letter for the total amount due to the Funds of $12,340.29 that included the principal contributions, liquidated damages per Mr. Dezort's bank statements, and $6,236.18 in prior liquidated damages from the unpaid principal contributions as of the date when this lawsuit was filed.  Mr. Dezort objected to these additional findings per his bank statements.  The Funds agreed to accept these objections, because a compliance audit had not been possible, and because the Company has ceased operating.  Thus, the Funds revised down the amount due to the liquidated damages of $6,236.16.  (See, Exhibit A, ¶5; and Exhibit B).

9.   According to the Collective Bargaining Agreement and the respective Trust Agreements to which the defendant is bound, payment is owed for liquidated damages in the amount of 20% (twenty percent) of unpaid or late contributions to the Welfare, Pension, and Training funds, and 10% (ten percent) of the principal amount of delinquent contributions to the LDCLMCC, CAICA and LECET funds, and for Union dues.  As established by Mr. Christopher's Affidavit (Exhibit A, ¶4) and by the Laborers' Pension & Welfare Funds Contractor Penalty History (Exhibit B), at the time this lawsuit was filed the Company had failed to submit reports and payments for January 2011 through April 2011.  On April 13, 2011, the Company untimely paid its principal

contributions for its January and February 2011 reports, and was assessed liquidated damages of $6,236.16 for its late payments.  This amount is detailed in the Laborers' Pension & Welfare Funds Contractor Penalty History, Exhibit B on page one.

10.     As required by Article IX , paragraph 1 of the Collective Bargaining Agreement, all employers are required to procure, carry and maintain a surety bond in an amount that is satisfactory to the Union.  This bond must be in excess of $5,000.00 to guarantee the payment of wages, Pension and Welfare Trust Contributions during the term of the Agreement.  Should this Company resume operations it must show proof that it has obtained such a surety bond.  (See, Mr. Christopher Affidavit, Exhibit A, ¶6).

11.     Plaintiffs are entitled to attorneys' fees and costs under ERISA, 29 U.S.C.§1132(g)(2)(B).  The attached affidavit of Sara Stewart Schumann establishes the amount of attorneys' fees incurred in this matter are $11,386.25 and $610.00 in costs, which consists of service of process and filing fees. (See, Affidavit of Sara Stewart Schumann, Exhibit C).

**WHEREFORE,** plaintiffs request entry of a judgment against Jordan's Brokery & Consultants, Inc., and Concrete Cutting Technology in a total amount of $18,232.41, and a Court order demanding that should defendants resume operations that it immediately provide written proof that it has obtained a surety bond to plaintiffs' counsel, Sara S. Schumann at the address below.

Respectfully submitted,
 /s/ Sara S. Schumann
One of plaintiffs' attorneys

Karen I. Engelhardt
Sara S. Schumann
ALLISON, SLUTSKY & KENNEDY, P.C.,
230 W. Monroe Street Suite 2600
Chicago, IL 60606
(312) 364-9400

May 8, 2012

4